UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:  ALICIA MARIE RICHARDS,<br><br>    Debtor, | Case No. 8:23-cv-00697-SB |
| ALICIA MARIE RICHARDS,<br><br>    Appellant,<br><br>v.<br><br>RICHARD A. MARSHACK, CH. 7 TRUSTEE,<br><br>    Appellee. | ORDER AFFIRMING DENIAL OF REQUEST TO PURGE CONTEMPT [8:21-BK-10635-SC, DKT. NO. 1270] |

　　Debtor Alicia Marie Richards was held in contempt by the bankruptcy court after she failed to turn over or adequately account for lapsed homestead-exemption funds.  Debtor sought to purge her contempt by providing an accounting and asserting that it was impossible for her to comply with the court's order.  The bankruptcy court found the information she provided to be seriously deficient and denied her request for a hearing without prejudice.  Debtor appeals the denial, arguing that the bankruptcy court erred in failing to find that she purged the contempt and in failing to hold a hearing.  For the reasons stated below, the Court affirms the bankruptcy court's order.

I.

　　Debtor filed a voluntary Chapter 7 bankruptcy petition.  In her filing, she disclosed a community property interest in real estate located in Newport Beach, California.  *See* Dkt. No. 14 Supplemental Excerpts of Record (SER) at SER

1

0014.[1]  Debtor claimed that the property was subject to a homestead exemption.  *See id*.

After the property was sold, Debtor received $300,000, representing half of the homestead exemption, from the bankruptcy trustee.  SER 0014–15.  Under California law, she had six months to reinvest the money in an eligible dwelling.  Cal. Civ. Proc. Code § 704.720(b); *In re Jacobson*, 676 F.3d 1193, 1198 (9th Cir. 2012).  Because she failed to reinvest the money, the bankruptcy court ordered her to turn over what remained of the $300,000 and to account for any spent funds.  Dkt. No. 12 at 5.  Debtor failed to comply with the order.

On January 12, 2023, the bankruptcy court conducted a hearing at which Debtor was present, found her in contempt, and remanded her into custody.  Dkt. No. 14-6; Dkt. No. 12 at 6.  The Court held another hearing on January 19, 2023, at which Debtor was again present.[2]  Dkt. No. 13.  At this hearing, she was again afforded the opportunity to purge her contempt but failed to do so.  SER 0156–159  The bankruptcy court set a status conference in June 2023 to address Debtor's compliance with the turnover order but allowed her to submit a request to advance the conference if she wished to purge her contempt before then.  SER 0009–10.

On March 28, 2023, Debtor filed a declaration requesting a telephonic hearing on her alleged inability to comply with the bankruptcy court's turnover order and attached a one-page exhibit that purports to be an accounting.  SER 0023–31.  The exhibit accounts for $311,112.00 in expenses as follows:

| Amount | Description |
| --- | --- |
| $76,000 | Food/Cosmetics/Medical |
| $55,000 | Car/Gas/Oil/Repairs/Parking fees |
| $33,000 | Storage/Moving |
| $400 | Post office box |

---

[1] Although Dkt. No. 14 contains subparts, for ease of reference, the Court refers to Dkt. No. 14 in its entirety as SER.  The page numbers referenced are to the Bates-stamped page numbers (formatted as "SER XXXX") at the bottom of each page in Dkt. Nos. 14-1 through 14-6.

[2] The Court grants Trustee's request for judicial notice of the January 19, 2023 transcript.  Dkt. No. 13.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (stating that a court may take judicial notice of transcripts from a court proceeding).

| $35,739 | Supplies/Postage/Phone/Ink/Adobe/Zoom/Boxes |
|---|---|
| $44,000 | Legal fees/Transcripts/Processing/Pacer/Research |
| $21,000 | Hotel fees |
| $5,000 | Travel/Retreat/Vacation (Stress release) |
| $4,000 | Clothing |
| $2,640 | Laundry |
| $20,333 | Estimated lost at time of arrest |
| $14,000 | Bank account mixed with personal funds ($5,000) |
| $311,112[3] | Total expenditures |

SER 0031.  Debtor stated that she was unable to provide additional information because she did not have possession or control of bank documents.  SER 0026, 0028.

      The bankruptcy court construed Debtor's declaration as a request for a hearing to purge her contempt.  The court determined that Debtor's accounting "lack[ed] sufficient detail to warrant advancement" of the hearing and that the "broad categories" provided by Debtor did not "constitute an accounting sufficient to purge Debtor's contempt."  SER 0010.  The court reiterated to Debtor the requirements to purge her contempt:  "Debtor must provide a detailed breakdown or explanation, containing dates, amounts, and vendors identified by name sufficient to enable Trustee to determine how and where the funds were spent or where they presently are, to enable Trustee to recover any existing balance."  *Id*.  Moreover, the court noted that the accounting contradicted Debtor's prior sworn testimony and bank records, rendering the accounting "of little to no evidentiary value."  SER 0010–11.  The bankruptcy court therefore denied Debtor's motion without a hearing.

      Debtor now appeals this order.  As an initial matter, Trustee Richard A. Marshack challenges the scope of the appeal, asserting that Debtor is only appealing the bankruptcy court's refusal to advance the June 2023 hearing.  In reply, Debtor claims she is appealing not only the bankruptcy court's denial of her request to advance the hearing, but also the court's finding that her accounting was insufficient and the denial of her claimed inability to comply.  *See* Dkt. No. 16 at 4.

---

[3] It is unclear where the additional $11,112 came from, whether the additional $11,112 reflects a mathematical error or the commingling with personal funds (beyond the $5,000 she identified as personal funds), and whether the accounting covers the time period at issue, March 2022 to January 2023.

Because the notice of appeal adequately identifies these two matters as the subject of appeal, the Court finds that they fall within the scope of the appeal.  *See In re Nakhuda*, 703 F. App'x 621, 622 (9th Cir. 2017) (stating that under Federal Rule of Appellate Procedure 3, the notice of appeal, which designates the "judgment, order, or part thereof being appealed from," establishes the scope of appeal).

II.

This Court has jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges.  28 U.S.C. §158(a).  A bankruptcy court's civil contempt order is a final order subject to appellate review.  *See In re Taggert*, 980 F.3d 1340, 1347 (9th Cir. 2020); *In re Wallace*, 490 B.R. 898, 904 (9th Cir. B.A.P. 2013) ("Where the contempt proceeding is the sole proceeding before the court, an order of civil contempt finding a party in contempt of a prior final judgment and imposing sanctions is a final appealable order.").  District courts function as appellate courts when reviewing decisions from bankruptcy courts, applying the same standards of review as federal courts of appeal.  *In re Guadarrama*, 284 B.R. 463, 468 (C.D. Cal. 2002).  The rejection of an impossibility defense is reviewed for clear error.  *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) ("We review a district court's findings in connection with rejecting an impossibility defense for clear error.").  Whether an alleged contemnor was deprived of due process is reviewed de novo.  *Thomas, Head and Greisen Emps. Tr. v. Buster*,  95 F.3d 1449, 1458 (9th Cir. 1996) ("The issue of whether a district court provided an alleged contemnor due process . . . is a legal question subject to de novo review on appeal."), *cert. denied*, 520 U.S. 1116 (1997).

III.

Debtor previously challenged the bankruptcy court's decision to hold Debtor in contempt.  This Court affirmed that decision and also determined that she received adequate process before being held in contempt.  *In re Richards*, 23-CV-199-SB, 2023 WL 4976185 (C.D. Cal. Aug. 1, 2023).  Debtor now contends that the bankruptcy court erred in finding that she had subsequently failed to purge her contempt and by denying her due process when making that finding.[4]  The Court analyzes each contention in turn.

---

[4] This Court also previously affirmed the bankruptcy court's rejection of Debtor's impossibility defense.  *In re Richards*, 2023 WL 4976185, at *6-7.

A.

The bankruptcy court did not clearly err in finding that Debtor had not shown that it was impossible for her to comply with the order. A contemnor may purge her contempt by producing evidence of a present inability to comply. *See United States v. Drollinger*, 80 F.3d 389, 393 (9th Cir. 1996) (stating that impossibility is a complete defense to civil contempt). The contemnor bears the burden of showing "categorically and in detail" why she cannot comply with the court's order. *Affordable Media*, 179 F.3d at 1241.

Debtor first suggests that she did not know what was required to purge her contempt. SER 0026. But the bankruptcy court clearly directed her to turn over the $300,000 and account for any shortfall. *Id*. at 0009 ("On January 24, 2023 [Dk. 1162], this Court entered an order continuing the status conference on Debtor's compliance with the order directing her to turnover $300,000 in lapsed homestead funds or provide an accounting of same . . ."); *see also id*. at 0096 ("You need to turn over the $300,000 or all of the money that is remaining to the Trustee. You are to provide an accounting and documentary evidence to the Trustee regarding the disposition of any homestead funds not turned over . . ."). Debtor acknowledged the requirements outlined in the order. *Id*. at 0026 ("I was ordered to turn over $300,000 that I did not have and . . . then it ordered me to account for money not turned over . . ."). Thus, Debtor cannot reasonably claim that she was confused by the order and believed that it required her to turn over $300,000 even if she did not have the money.[5]

In fact, Debtor appears to have understood that the turnover order called for an accounting of the homestead funds if any or all the money was spent, because she submitted what purported to be an accounting. The proffered accounting, however, was deficient. *See id*. at 0010 (finding that the accounting failed to "provide a detailed breakdown or explanation, containing dates, amounts, and vendors identified by name sufficient to enable Trustee to determine how and where the funds were spent or where they presently are, to enable Trustee to recover any existing balance"). The bankruptcy court determined that the broad categories and aggregated amounts failed to provide a meaningful accounting (e.g.

---

[5] Debtor further asserts that she was not required to follow the order because it was confusing and vague. SER 0025–29. This argument fails for the same reason.

$76,000 on food, cosmetics, and medical; $35,739 on supplies, postage, phone, ink, Adobe, Zoom, and boxes; $2,640 on laundry).[6]  *Id*.

Beyond the facial implausibility of some of the accounting entries, the accounting raised other red flags.  The bankruptcy court noted that the accounting "appear[ed] to contradict Debtor's prior testimony, under oath."  SER 0010. (noting the existence of $10,000 in her purse in her accounting when she previously testified at the judgment debtor exam that she did not have such funds). Under all the circumstances, the bankruptcy court cannot be faulted for rejecting the claimed accounting and finding it suspiciously wanting.  Indeed, the suspicions appear to have been well founded.  At a June 15 hearing, where Debtor was afforded an opportunity to purge her contempt with the assistance of counsel, Debtor's attorney informed the bankruptcy court that Debtor had admitted to him that she had money in a suitcase.  Transcript of Motion to remove Trustee, Debtor's Exam and Status Conference Re Contempt at 62:10–21, *In re Richards*, (June 15, 2023) (8:21-bk-10635-SC).  Even if Debtor does not know the whereabouts of the suitcase (as she claims), the failure to disclose the existence of this money undermines her claim that she made a good-faith effort to provide an accounting so as to purge the contempt.  Thus, the bankruptcy court did not err in rejecting the accounting.

Debtor next argues that it is impossible for her to provide a more detailed accounting because she does not have access to her frozen bank records.  SER 0028.  This argument does not explain, however, why she failed to account for information clearly within her knowledge, such as the money in the suitcase (as discussed above).  Nor would the bank records shed light on what she did with the nearly $200,000 in cashier checks and cash withdrawals she made in November 2022.  *Id*. at 0016–17.  This Court cannot say on this record that the bankruptcy court was wrong to find that Debtor neglected to disclose information that was clearly available to her—i.e., information about the disposition of funds she received.  See *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1481–82 (9th Cir. 1992)  ("Where the contemnor is the only one who possesses the relevant financial information, and chooses not to disclose it, [her] failure to

---

[6] In reviewing a motion to recuse Judge Clarkson, another bankruptcy judge also concluded that the accounting was deficient, stating that it was "not sufficient by any means."  Transcript of Ex Parte Motion to Recuse Scott C. Clarkson at 18:6–20 (May 17, 2023) (8:21-bk-10635-SC).  The Court sua sponte takes judicial notice of this and other hearings in the underlying bankruptcy proceeding.  See *Reyn's Pasta Bella*, 442 F.3d at 746 n.6.

present any evidence on the record may not be charged either against the opposing party or result in a holding that the district court abused its discretion in imposing the sanction.") (cleaned up).

In short, the bankruptcy court did not clearly err in rejecting Debtor's impossibility defense. The court reasonably concluded that the deficiencies in the proffered accounting rendered it "insufficient . . . to purge Debtor's contempt" SER 0010, and that Debtor failed to carry her burden of showing "categorically and in detail" that she was unable to provide a more detailed accounting, *Affordable Media*, 179 F.3d at 1241. Because Debtor has failed to demonstrate that she has taken "all the reasonable steps within [her] power" to comply with the turnover order, the bankruptcy court did not err in rejecting the defense as presented. *See Shuffler v. Heritage Bank*, 720 F.2d 1141, 1146 (9th Cir. 1983).

B.

Debtor also asserts that she was denied due process because she was not granted the hearing she requested in March 2023 to address her proffered accounting and claimed inability to comply with the turnover order. SER 0023. To establish a claim for a due process violation, a party must prove that she was denied a meaningful opportunity to be heard and that she was prejudiced thereby. *See In re Rosson*, 545 F.3d 764, 776 (9th Cir. 2008) (rejecting a debtor's due process claim for lack of prejudice), *partially abrogated on other grounds as recognized in In re Nichols*, 10 F.4th 956, 962 (9th Cir. 2021).

The bankruptcy court considered the substance of the filing and determined that the proffered accounting was deficient. The court explained the deficiencies and how to cure them. The court also noted, based on information provided by Trustee in his opposition to the March 28, 2023 motion, that Debtor had filed the deficient accounting seemingly without the benefit of counsel. The Trustee disclosed that Debtor's counsel was in the process of reviewing relevant documents and required additional time to conduct that review and to consult with his client. Based on all the information before it, the bankruptcy court denied the March 2023 hearing request without prejudice, allowing Debtor to submit a proper accounting with the assistance of her counsel before conducting a hearing. Within two months, the bankruptcy court conducted that hearing, allowing Debtor and her counsel to present evidence and argument in support of her accounting and her impossibility defense. In addition to the June 2023 hearing, the bankruptcy court held a hearing on the contempt matter in October 2023.

7

Before addressing the merits of the due process claim, the Court must first determine whether Debtor has presented a live controversy. Debtor appears to argue that she is entitled to have her contempt purged as a result of this alleged due process violation. But the appropriate remedy for a due process violation in this context is "to order the process that was due." *Brady v. Gebbie*, 859 F.2d 1543 (9th Cir. 1988); *see Levine v. City of Alameda*, 525 F.3d 903, 906 (9th Cir. 2008) (citing *Brady* for this proposition and approving of a full evidentiary hearing to remedy the failure to provide a hearing).

Thus, even if the Court were to determine that the bankruptcy court erred in not advancing the June 2023 hearing, the only relief to which she would be entitled is a hearing—which she subsequently received in June 2023 and October 2023. In light of these subsequent proceedings, Trustee contends that the due process claim is moot. "A claim is moot if it has lost its character as a present, live controversy," *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009), which may occur "[i]f there is no longer a possibility that an appellant can obtain relief for [her] claim," *Ruvalcaba v. City of L.A.*, 167 F.3d 514, 521 (9th Cir.1999). Because Debtor already has received the process due (albeit approximately a month-and-a-half later than requested), Debtor has not demonstrated she suffered an "actual injury that can be redressed by a favorable judicial decision." *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983); *see also Tate v. Univ. Med. Ctr. Of S. Nev.*, 606 F.3d 631, 634 (9th Cir. 2010) ("The basic question is whether there exists a present controversy as to which effective relief can be granted."). Thus, Debtor's due process claim is moot.

IV.

Debtor has failed to demonstrate that the bankruptcy court clearly erred in finding that her declaration and accounting failed to purge her contempt. Nor has she presented a live controversy over the bankruptcy court's purported denial of her due process rights by declining to advance the June 15 hearing. The bankruptcy court's order is therefore AFFIRMED.

Date: December 12, 2023

_____
Stanley Blumenfeld, Jr.
United States District Judge